Potts
*vs.*
Merrit and
Potts.

4. The circuit court, on dismissing a bill for want of the proper parties, should dismiss without prejudice to another suit.

---

## Potts *vs.* Merrit and Potts.

Case 8.

APPEAL FROM WARREN CIRCUIT.

1. A verbal antenuptial contract is within the provisions of the statute of frauds of 1796, and the 1st sec., chap. 22, of the Revised Statutes, page 192, and no suit at law or in chancery can be maintained upon such contract.

2. By the statute of 1798, sec. 34, Stat. Law, 1477, slaves belonging to the wife at the marriage vest absolutely in the husband.

3. A husband who became, by marriage, entitled to slaves of his wife made a conditional sale thereof to one having previously by another instrument, purported to ratify and confirm a will made by his wife, giving the slaves to her brother. Held, that the first instrument is ineffectual to divest a previous right in the husband of any right acquired by his marriage, though in the first instrument he acknowledged the existence of an antenuptial agreement to give the wife the right to dispose of the slaves, especially during the life of the husband.

4. Such a paper could not be considered as of greater force than a will, subject to revocation at pleasure.

June 13.

Chief Justice HISE delivered the opinion of the court.

Case stated.
1. A verbal antenuptial con-

The verbal agreement between the complainant, Priscilla, and her husband, Jonathan Potts, made before their marriage, to the effect that she should re-

tain the title to her slaves, and have the control and the power of disposition of them after marriage as before, as charged in the bill, and even though sufficiently proven by the witnesses, is within the statute of frauds of 1796, (*Stat. Law*, 734,) and also embraced by the *5th specification of the 1st section of the 22d chapter, Revised Statutes, page 192;* and no action or suit in law or chancery, to enforce it in whole or in part, can be maintained. The decree of the circuit court cannot, therefore, be sustained, so far as it is based upon such assumed contract.

By the marriage of the complainant with Jonathan Potts, her slaves became his property, and the legal title and absolute right to them vested in him by virtue of the 34th section of the act of 1798, *Stat. Law*, 1477. Her right to them having been thus divested, she could not of course, as a *feme covert*, without right, maintain an action against her husband, his vendee, or even donee, to recover the said slaves. If the sale and conveyance from Jonathan Potts to William W. Merrit, of the slaves which had belonged to the wife before her marriage with Potts, had been procured by Merrit fraudulently from Potts, who was, either by incapacity to contract, or by the deceit practiced upon him by Merrit, overreached in the sale or gift and delivery of them, then Potts, but not his wife, could maintain an action to avoid the contract. So, if the sale and conveyance of the slaves to Merrit was made without consideration, or to hinder and delay the creditors of Potts, they, or subsequent innocent purchasers from Potts, might avoid the sale to Merrit, and subject or recover the slaves; but in no event, during the life of Potts, can his wife demand the interposition of a court of law or equity to enforce a parol marriage contract, or to recover the slaves—all her right and title to which had been transferred by operation of law to Jonathan Potts upon his marriage with the complainant.

Potts does not complain of fraud, or seek to avoid the sale to Merrit, but on the contrary, gives sound

POTTS
*vs.*
MERRIT AND
POTTS.

tract is within the provisions of the statute of frauds of 1796, and the 1st sec., 22d chapter, of the Rev. Stat., page 192, and no suit at law or in chancery can be maintained upon such contract.

2. By the statute of 1798, sec. 34, Statute Law, 1477, slaves belonging to the wife at the marriage vest absolutely in the husband.

reasons and adequate motives which led him to convey the slaves to Merrit, for what appears to be a mere nominal consideration.. No creditors of Potts or subsequent innocent purchaser from him, contests Merrit's title. Potts, who had the right, might give or vend the slaves to another, though not related to himself or wife, and who would thereby hold them against the claim and suit of the wife, instituted in the lifetime of her husband.

3. A husband who became, by marriage, entitled to slaves of his wife made a conditional sale thereof to one having previously, by another instrument, purported to ratify and confirm a will made by his wife, giving the slaves to her brother. Held, that the first instrument is ineffectual to divest a previous right in the husband of any right acquired by his marriage, though in the first instrument he acknowledged the existence of an antenuptial agreement to give the wife the right to dispose of the slaves, especially during the life of the husband.

The paper executed by Potts, dated 28th February, 1848, purporting to be a conditional ratification, or rather adoption of a will, which had been previously signed and acknowledged by the complainant, and by which she vainly devises the slaves in question to her brother, Samuel Hasslip, did not and could not have the effect to transfer from Potts to his wife his right to the slaves; and if the same was even valid and irrevocable, it could not divest Potts or his vendee of the title to, and possession of the slaves during the joint lives of Potts and wife. For the paper does not create a present separate estate, or right in his wife to the slaves; he does not divest himself thereby of his own title acquired by his marriage, but it amounts to nothing more than a will, by which he devises the slaves, in conformity with the will and desire of his wife, as indicated in her own abortive will, to Samuel Hasslip, and by which he confesses, (say, for the sake of argument,) that he had agreed with his wife before marriage, that those slaves should be so devised; yet this document, thus devising the slaves, or adopting the disposition thereof as made in the paper dated 17th October, 1846, signed by complainant, did not disturb or affect Potts' right to the slaves during his own life at least, and the complainant could not acquire to herself thereby any such right or title as would enable her to recover, herself, the slaves from Potts' vendee, whilst her husband lived.

But the paper referred to is in fact nothing but a will, which being revocable at the pleasure of Potts, was actually revoked by him impliedly and effectually, first, by selling the slaves devised, to Merrit, by which the devise to Hasslip was defeated, and, secondly, by an express revocation in writing.  So that it seems to this court that there is no settled doctrine of law, or established principle of equity, upon which the complainants claim to the slaves in question can be sustained.  And therefore, inasmuch as the appellees have withdrawn their assignment of cross-errors, and consented that the decree of the circuit court should not be disturbed, and because no error has been committed by the circuit judge prejudicial to the interest of the complainant, the said decree is affirmed.

W. L. UNDERWOOD for appellant; HARLAN and J. R. UNDERWOOD for appellees.